UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN ELECTRICAL EMPLOYEES
PENSION FUND, et al.,

        Plaintiffs,

v.

AIM ELECTRIC, INCORPORATED,

        Defendant.
_____/

Hon. Janet T. Neff

Case No. 1:07-cv-01137

**REPORT AND RECOMMENDATION**

      This matter is before the Court on Defendant's Motion to Enforce Settlement Agreement (Dkt. 50). The parties were heard on the motion on November 24, 2009. For the reasons stated below, the undersigned recommends that the settlement agreement be enforced to include any potential withdrawal liability of defendant.

      Plaintiffs, Michigan Electrical Employees Pension Fund, *et al.*, were established through collective bargaining and are maintained and administered pursuant to § 302 of the Labor Management Relations Act of 1947, 29 U.S.C. § 186, *et seq*. and the Employee Retirement Income Security Act of 1974 as amended ("ERISA"), 29 U.S.C. § 1001, *et seq*.

      Defendant AIM Electric Incorporated ("AIM") is a Michigan corporation doing business in the building and construction industry. There was a dispute between the parties as to when Defendant had effectively terminated its collective bargaining agreement with the Michigan Chapter, National Electrical Contractors Association, Inc. and the International Brotherhood of Electrical Workers, Local Union No. 948. However, Plaintiffs do not dispute that the latest date on

which the contract was terminated was May 31, 2008.  Plaintiffs sought allegedly unpaid pension fringe benefits provided under a collective bargaining agreement Defendant had with Plaintiffs.

The parties participated in a settlement conference with the undersigned on September 15, 2008.  The conference was attended by Chris Jones on behalf of Plaintiffs.  Mr. Jones is a trustee for both the Michigan Electrical Employees Pension Fund and the Michigan Electrical Employees Health Plan.  AIM's president, Rodney Miller, attended on behalf of Defendant.  Each party's counsel was also present. The parties reached a settlement which was placed on the record in open court.

The issue that has since arisen is whether or not the parties intended the settlement to include any potential withdrawal liability of AIM.  The Multi-Employer Pension Plan Amendment Act of 1980, 29 U.S.C. § 1381, *et seq*., provides that if an employer withdraws from a multi-employer plan in a complete withdrawal then the employer is liable to the plan in the amount determined to be the withdrawal liability.

This is a somewhat difficult question.  AIM takes the position that the parties intended the settlement to be a global one ending all disputes arising among the parties.  This is certainly correct.  (Transcript of Settlement at Dkt. 49, pp. 3, 4, and 11).  The fact that the settlement was intended to be global was confirmed by all parties and the Court on the record.  Further, the potential for withdrawal liability by Defendant to Plaintiffs arose no later than May 31, 2008, when the collective bargaining obligations among them terminated, well before the September 15, 2008 settlement conference.  Further, James E. Schriber, administrative manager of Michigan Electrical Employees' Pension Fund, was well aware of potential withdrawal liability for AIM as early as April 6, 2006.  (See Reply of Defendant, Dkt. 55, and the Exhibit and Affidavit attached thereto).

Plaintiffs' counsel argues, though, that Plaintiffs' cause of action was contractually based, i.e., based on the collective bargaining agreement. Plaintiffs further argue that the amount of withdrawal liability was not clear on the date of the settlement conference; rather, only the potential of withdrawal liability existed. However, Plaintiffs could have excepted any settlement with Defendant from potential withdrawal liability but did not do so, although they were clearly on legal notice of such potential.

The undersigned believes this dispute arose because of the recent turmoil in the investment markets. A withdrawn employer must pay a percentage of any anticipated shortfall in the Plan's funding as of the date the employer withdraws. With a stable or rising market, withdrawal liability does not usually accrue. In a volatile or diminishing value investment market this is not the case.

According to Plaintiffs the pension fund had not issued a demand to AIM for payment of withdrawal liability as of the date of the settlement. The Plaintiff pension fund further argues that no demand to AIM for payment of employer withdrawal liability had been issued because the date of AIM's withdrawal is a factor in the calculation of the withdrawal liability amount, and that date -- the date that AIM ceased to have an obligation to contribute to the Plaintiff pension fund -- was to be decided in this lawsuit.

Defendant AIM claims that its obligations ended in 2006 and the funds argue that its obligations continued at least until May 31, 2008. However, what appears to be relevant is that Plaintiffs agree that the date this obligation ended was no later than May 31, 2008, well before the September settlement conference.

The undersigned does not agree with Plaintiffs' arguments for three reasons. First, the settlement that the parties agreed to did not even address the issue of when Defendant's

contractual obligations ended. It was simply a compromise of disputed amounts owed. Second, while withdrawal liability might have a statutory basis, both the contractual claims and the withdrawal liability issue are contained within the Employee Retirement Income Security Act, also known as ERISA. Finally, neither the date that the collective bargaining agreement could be considered to have been terminated nor even the potential for withdrawal liability was excluded from the "global" settlement in this matter.

What the undersigned believes happened is that because of the turmoil and downturn of the investment markets, what has historically been a "non-issue" for pension plans invested in a stable or ever rising market became a large issue with the sharp downturn in the investment markets. However, AIM should not bear the brunt of the vagaries of the investment markets in these circumstances when all parties intended the settlement to be global and the potential for some withdrawal liability was clearly known to both sides. For these reasons:

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Enforce Settlement Agreement (Dkt. 50) be **granted**, that the settlement reached on September 15, 2008 be enforced, that AIM be ordered to pay Plaintiffs a total of $25,000 over a two year time period with simple interest of 5% with the first payment to be made 30 days from the date the case is dismissed, that the other terms of the settlement as currently agreed to by the parties be enforced, and that with any potential withdrawal liability of Defendant be included in the settlement agreement.

Date: March 3, 2009
                /s/ Ellen S. Carmody
                ELLEN S. CARMODY
                United States Magistrate Judge

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).