UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MICHIGAN ELECTRICAL
EMPLOYEES PENSION FUND *et al.,*

    Plaintiffs,

v

AIM ELECTRIC, INCORPORATED,

    Defendant.
_____/

Case No. 1:07-cv-1137

HON. JANET T. NEFF

## OPINION

Pending before the Court is plaintiffs' objection to the magistrate judge's Report and Recommendation to grant defendant's Motion to Enforce Settlement. Because a substantial dispute exists about the terms of the settlement agreement, this Court grants the objection and denies defendant's motion.

### I. BACKGROUND

Plaintiffs filed this action under the Labor-Management Relations Act (LMRA), 29 U.S.C. § 151 *et seq.,* and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, alleging a breach of the fringe benefit provisions of the residential wiremen collective bargaining agreements entered into by defendant and the International Brotherhood of Electrical Workers Local Union No. 948. At a conference before the magistrate judge on September 15, 2008, the parties indicated they had reached a verbal agreement to settle the case. The magistrate judge instructed

1

the parties to formalize their agreement in writing and to submit dismissal papers by October 15, 2008.

On October 14, 2008, defendant filed a Motion to Enforce Settlement, which was referred to the magistrate judge. Defendant claimed that when the parties attempted to reduce their agreement to writing, they disagreed as to whether their settlement resolved three particular claims. Specifically, plaintiffs disagreed with the inclusion of the following underlined language in defendant's draft settlement agreement:

> The Funds, AIM, and the Unions desire to settle and otherwise resolve all claims relating to the Lawsuit and any claims <u>of the Funds against AIM, including any claim</u> for contributions which has been, or could have been made, <u>and including any withdrawal liability</u>; <u>and any claims of the Unions for Union dues</u> under any collective bargaining agreement to which Local Unions No. 692 or 948 have been a party;

[Df. Mot. Exh. 1]

In their response to defendant's motion, plaintiffs conceded the inclusion of two of the three claims (the first and third underlined phrases). However, plaintiffs continued to dispute the inclusion of any potential "withdrawal liability" of defendant (the second underlined phrase) and therefore requested that the Court find that the parties had not reached a settlement of this matter. Plaintiffs attached to their response the affidavit of Trustee Chris Jones, who attended the settlement conference on their behalf. Jones attested that the topic of potential withdrawal liability "did not arise at any point during the course of our discussions" and that he did not intend to enter into a settlement agreement that included a waiver of defendant's withdrawal liability. Jones attested to his belief that defendant has not yet been assessed with its withdrawal liability because "the issue of when its contractual obligations ended will not be resolved until the conclusion of this lawsuit."

2

In reply, defendant supplied an affidavit from its president, Rodney Miller, in which Miller attested that withdrawal liability was an issue between the parties as early as 2006. In support, Miller referenced an April 6, 2006 letter from the administrator of plaintiff pension fund to defendant, which states that defendant would be liable for employer withdrawal liability if union representation of its employees was withdrawn. The letter indicates the estimated amount for termination in 2005 – $46,170.21 – and states that auditors were preparing an analysis of liability if defendant withdrew in 2006. Defense counsel attached the letter to its reply.

The magistrate judge heard oral argument on the Motion to Enforce Settlement on November 24, 2008. The parties did not take advantage of her offer to hold an evidentiary hearing, and the magistrate judge took the motion under advisement. On March 3, 2009, the magistrate judge issued a Report and Recommendation, recommending that this Court grant defendant's motion and enforce the settlement agreement to include any potential withdrawal liability of defendant.

The magistrate judge acknowledged that defendant's motion presents "a somewhat difficult question." The magistrate judge relied on the character of the parties' verbal settlement agreement, describing the agreement as "simply a compromise of disputed amounts owed." The magistrate judge pointed out that both the claim for benefits and the claim for employer withdrawal liability were contained within ERISA. Last, the magistrate judge opined that the parties' dispute over employer withdrawal liability arose because of the recent turmoil in the investment markets and concluded that defendant should not "bear the brunt of the vagaries of the investment markets in these circumstances when all parties intended the settlement to be global and the potential for some withdrawal liability was clearly known to both sides."

The magistrate judge recommended that the settlement reached on September 15, 2008 be enforced; that defendant be ordered to pay plaintiffs a total of $25,000 over a two-year period with simple interest of five percent with the first payment to be made 30 days from the date the case is dismissed; that the other terms of the settlement as currently agreed to by the parties be enforced; and that any potential withdrawal liability of defendant be included in the settlement agreement.

Plaintiffs object to the magistrate judge's recommendation to include defendant's potential withdrawal liability in the settlement agreement. Defendant has filed a response to plaintiffs' objection.

## II. ANALYSIS

In accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b)(3) and based on the record developed before the magistrate judge, the Court has performed de novo consideration of the recommendation to which plaintiffs have objected. Plaintiffs proffer two arguments in support of their position. Although this Court is not persuaded by plaintiffs' first argument, plaintiffs' second argument has merit.

### A. *Overview of Withdrawal Liability*

Under ERISA as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. §§ 1381-1461, "withdrawal liability" represents an employer's obligation to pay its "proportionate share of the plan's unfunded vested benefits" at the time of withdrawal. *CPT Holdings, Inc. v. Industrial & Allied Employees Union Pension Plan, Local 73,* 162 F.3d 405, 407 (6th Cir. 1998). Before enactment of the MPPAA, an employer withdrawing from a multiemployer pension plan was not necessarily required to pay its share of unfunded, vested benefits. *Id.*

An employer's withdrawal liability is "the difference between the present value of vested benefits (benefits that are currently being paid to retirees and that will be paid in the future to covered employees who have already completed some specified period of service, 29 U.S.C. § 1053) and the current value of the plan's assets. 29 U.S.C. §§ 1381, 1391." *CPT Holdings,* 162 F.3d at 407. Withdrawal liability differs from a failure to satisfy monthly or annual funding requirements. *Id.* Whereas each missed payment gives rise to an immediate right to payment by a plan, withdrawal liability is premised on an employer's proportionate share of unfunded vested benefits at the time of withdrawal. *Id.* at 407, 409. "A multiemployer pension plan has no enforceable right to payment for withdrawal liability until an employer actually withdraws from a plan, leaving the plan underfunded." *Id.* at 409.

The MPPAA provides that once the plan sponsors determine that an employer has completely or partially withdrawn from a pension plan, they must notify the employer of the amount of the liability, prepare a schedule for liability payments, and demand payment in accordance with the schedule. 29 U.S.C. §§ 1382, 1399(b)(1). "[T]he actual determination of withdrawal liability is not an exact science, and therefore there is a range of reasonable actuarial determinations of withdrawal liability." *Bd. of Trustees, Michigan United Food and Commercial Workers Union v. Eberhard Foods,* 831 F.2d 1258, 1261 (6th Cir. 1987). If an employer does not satisfy its withdrawal liability, then the trustees may bring suit to collect the deficiency in federal court, just as they may for collection of a delinquent fringe benefit contribution. 29 U.S.C. §§ 1451(b) ("In any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution.").

5

B. *Jurisdiction*

Plaintiffs' first argument is that this Court lacks jurisdiction to enforce a settlement agreement that resolves defendant's potential employer withdrawal liability. Plaintiffs assert that "the amount of AIM's employer withdrawal liability was not an issue in the pending litigation because the amount had not been calculated." According to plaintiffs, the statutory issue of employer withdrawal liability falls outside the pending litigation on defendant's contractual obligation to make certain fringe benefit contributions.

In response, defendant argues that this Court has jurisdiction to enforce the settlement agreement at issue. Defendant emphasizes that its motion, in contrast to a post-dismissal motion seeking to enforce a breached settlement agreement, merely seeks to confirm the scope of the agreement into which the parties entered.

This Court is not persuaded by plaintiffs' allegation of a jurisdictional error by the magistrate judge. "This circuit has long recognized the broad, inherent authority and equitable power of a district court to enforce an agreement in settlement of litigation pending before it." *Therma-Scan, Inc. v. Thermoscan, Inc.,* 217 F.3d 414, 419 (6th Cir. 2000) (quoting *Bostick Foundry Co. v. Lindberg,* 797 F.2d 280, 282-83 (6th Cir. 1986)). "The power of a trial court to enter a judgment enforcing a settlement agreement has its basis in the policy favoring the settlement of disputes and the avoidance of costly and time-consuming litigation." *Kukla v. Nat'l Distillers Prods. Co.,* 483 F.2d 619, 621 (6th Cir. 1973).

"A federal court possesses this power 'even if that agreement has not been reduced to writing.'" *Therma-Scan,* 217 F.3d at 419 (quoting *Brock v. Scheuner Corp.,* 841 F.2d 151, 154 (6th Cir. 1988)). "When parties have agreed on the essential terms of a settlement, and all that remains

is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement." *Re/Max Int'l, Inc. v. Realty One, Inc.,* 271 F.3d 633, 646 (6th Cir. 2001).

Pursuant to familiar contract principles, the parties were free to agree to any terms, not contrary to public policy, that would settle their case. Nothing prevented defendant from insisting that plaintiffs relinquish any potential employer withdrawal liability claim, and nothing prevented plaintiffs from accepting money to not only extinguish their pending action but also to settle any claim to potential employer withdrawal liability triggered by the termination of their contractual obligations. "Settlement agreements should be upheld whenever equitable and policy considerations so permit." *Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1372 (6th Cir. 1976).

## C. *Meeting of the Minds*

Plaintiffs' second argument is that the parties did not reach a meeting of the minds about the inclusion of employer withdrawal liability. Plaintiffs do not contest that the word "global" was used while putting the settlement on the record. However, plaintiffs assert that when they engaged in settlement discussions with defendant, it was with the view that the Funds would be settling only the claims for contributions and dues that were presented in the pending litigation, not with the view that plaintiffs would be settling any potential yet still un-imposed employer withdrawal liability claim against defendant. Plaintiffs assert that the silence of the parties with regard to the contract termination date shows, if anything, that the parties were not considering employer withdrawal liability an element of their settlement.[1]

---

[1] Plaintiffs are not asserting that the parties considered the possibility of including potential employer withdrawal liability as a resolved claim but had different understandings as to how the agreement as drafted would provide for that contingency. *Compare Therma-Scan, Inc. v. Thermoscan, Inc.,* 217 F.3d 414 (6th Cir. 2000) (reviewing a provision in a settlement agreement that was capable of more than one reasonable interpretation).

7

Defendant similarly concedes that there was no specific mention of employer withdrawal liability placed on the record. However, defendant agrees with the magistrate judge's findings that the parties intended the settlement to be "global" and that the potential for some withdrawal liability was clearly known to both sides well before the settlement conference. Indeed, defense counsel shared at the motion hearing that defendant was provided with its amount of liability "very shortly" after the settlement conference, which was the catalyst for defendant's Motion to Enforce Settlement.

It is well established that a district court must conclude that agreement has been reached "on all material terms" before enforcing settlement. *Therma-Scan,* 219 F.3d at 419 (quoting *Brock,* 841 F.2d at 154). "In determining whether there was a meeting of the minds, the parties' objective, rather than subjective, intent governs." *United Paperworkers Int'l Union v. Champion Int'l Corp.,* 908 F.2d 1252, 1258 (5th Cir. 1990) (quoted in *Therma-Scan,* 219 F.3d at 420). *See also Re/Max,* 271 F.3d at 646 (noting that even though the parties had not yet formalized their agreement in writing, their "objective acts ... reflect[ed] that an agreement had been reached"). When there exists a substantial dispute as to the entry into, or the terms of, a settlement agreement, summary enforcement of a settlement agreement may result in inequities. *Therma-Scan,* 219 F.3d at 420; *Kukla,* 483 F.2d at 621.

There is a substantial dispute in this case as to whether the parties' settlement agreement includes a release of defendant's potential withdrawal liability. Neither party mentioned a potential employer withdrawal liability claim on the record at the settlement conference. Miller provided letter evidence that withdrawal liability was an issue between the parties as early as 2006, but trustee Jones attested that withdrawal liability never arose during settlement discussions. Jones attested that

he did not intend to enter into a settlement agreement on behalf of plaintiffs that included a waiver of defendant's withdrawal liability.

That the parties characterized the agreement they reached as a "global settlement" is not a reliable manifestation of their intentions to include this particular claim. The phrase "global settlement" is not a term of art. It may indicate a settlement of all pleaded claims, or it may indicate a settlement of both pleaded and potential claims, or it may indicate a different bargain. The phrase "global settlement" therefore does not elucidate the parties' intentions but simply leads back to their subjective meanings of the word "global." This is particularly true on this record, where defense counsel indicated at the settlement conference his understanding that the parties' "global" settlement encompassed not only plaintiffs' fringe benefit contribution claims but also any claims for union dues relating to any of the union locals in the Michigan area, and plaintiffs' counsel responded that union dues would "have to be one of the contingencies that we would have to determine." The parties' reliance on the phrase "global settlement" is reflective of the imprecision with which they attempted to conclude this matter.

Neither the magistrate judge nor this Court can perform the impossible task of reading the minds of the settling parties to determine their true intentions. This Court agrees with plaintiffs that there is no objective manifestation of a "meeting of the minds" on this material term of their agreement to settle this case. Consequently, this Court believes potential inequities may result from granting defendant's motion to enforce its draft of the parties' settlement agreement.

## III. CONCLUSION

In summary, the parties were free to bargain for the inclusion of the potential withdrawal liability claim, but the record indicates no such meeting of the minds to do so. The Court grants the

9

objection to the Report and Recommendation and denies defendant's Motion to Enforce Settlement Agreement. An Order consistent with this Opinion will be entered.


Date: July 6, 2009          /s/ Janet T. Neff
                            JANET T. NEFF
                            United States District Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN ELECTRICAL
EMPLOYEES PENSION FUND *et al.*,

    Plaintiffs,

v

AIM ELECTRIC, INCORPORATED,

    Defendant.
    _____/

Case No. 1:07-cv-1137

HON. JANET T. NEFF

## **ORDER**

**IT IS HEREBY ORDERED** that plaintiffs' objection (Dkt 59) is GRANTED and the Report and Recommendation (Dkt 58) is REJECTED.

**IT IS FURTHER ORDERED** that defendant's Motion to Enforce Settlement (Dkt 50) is DENIED.

Date: July 6, 2009

/s/ Janet T. Neff
JANET T. NEFF
United States District Judge